**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES R. MISCHKA, ) | |
| ) | CASE NO.   1:09-cv-02291 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff, James R. Mischka ("Mischka"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Mischka's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court VACATES the final decision of the Commissioner and REMANDS this matter for further proceedings consistent with this opinion.

**I.  Procedural History**

On March 21, 2006, Mischka filed an application for POD and DIB alleging a disability

onset date of March 10, 2006, and claiming that he was disabled due to pain in his lower extremities. His application was denied both initially and upon reconsideration. Mischka timely requested an administrative hearing.

On August 14, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Mischka, represented by counsel, testified. Edith J. Edwards testified as an impartial vocational expert ("VE"). On October 30, 2008, the ALJ found Mischka was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Mischka claims the ALJ erred because: (1) his finding at Step 5 of the sequential evaluation was contrary to law and unsupported by substantial evidence; (2) he failed to properly evaluate Mischka's credibility or the credibility of Mischka's sister; and, (3) his reliance on the VE's testimony was improper, as the VE's testimony was based on outdated material in the Dictionary of Occupational Titles ("DOT").

## II. Evidence

*Personal and Vocational Evidence*

Born on December 17, 1961, and age forty-four on the date last insured, Mischka is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). (Tr. 17.) Mischka has high school education and past relevant work as an auto assembler, assembly line worker, recycler, and packager of medical supplies. (Tr. 52.)

*Medical Evidence*

On July 6, 2002, Mischka was diagnosed with scoliosis and left knee pain. (Tr. 245.) X-rays taken five days later revealed probable old avascular necrosis. (Tr. 238.)

2

On December 4, 2002, Mischka was seen by Parminder Singh, M.D., and reported left hip pain. (Tr. 241.) Dr. Singh diagnosed scoliosis and avascular necrosis of the left femoral head. (Tr. 242.) Dr. Singh concluded that Mischka could only stand and/or walk two hours in an eight-hour workday, and was moderately limited in his ability to push/pull, bend, and perform repetitive foot movements. (Tr. 243.) He opined that Mischka was unemployable between thirty days and nine months. *Id*.

On January 9, 2003, Mischka reported to an emergency room ("ER") complaining of hip pain and trouble getting around. (Tr. 332.)

On February 19, 2003, Mischka was seen by William A. Seeds, M.D., and reported experiencing left hip pain for the past six months. (Tr. 308.) Dr. Seeds noted that x-rays of Mischka's left hip revealed a severely degenerated hip with subluxation. (Tr. 309.) Dr. Seeds and Mischka discussed total hip replacement. *Id*.

On March 24, 2003, Mischka underwent left hip replacement surgery due to degenerative joint disease. (Tr. 254-55). On April 4, 2003, while recovering at the Ashtabula County Nursing Home, Mischka complained of pain and swelling in his left wrist. (Tr. 280.) James Chillcott, M.D., found effusion and slight wrist warmth upon examination, but noted the etiology is unclear. (Tr. 281.) A wrist x-ray performed the same day revealed degenerative osteoarthritis. (Tr. 282.) On July 2, 2003, Dr. Seeds noted that Mischka's left hip was progressing well, though Mischka complained of left knee pain. (Tr. 295.)

On August 5, 2004, Mischka presented at the ER with multiple fractured ribs and a fractured clavicle. (Tr. 322-23.) He reported being hit by a car while riding his bicycle after consuming eight to ten beers. *Id*. X-rays also revealed degenerative thoracic spondylosis and

3

slight degenerative changes in the cervical spine. (Tr. 328-29.)

On August 29, 2005, Mischka was struck by a car again while riding his bicycle in an "inebriated" state. (Tr. 311-14.) At the ER, he was diagnosed with a closed head injury and multiple bruises and contusions. *Id*. He was discharged in stable condition the next day. *Id*.

On July 3, 2006, Mischka underwent a consultative evaluation with clinical psychologist Richard C. Halas, M.A., at the request of the state agency. (Tr. 346-51.) Halas noted that Mischka was neat and kempt, oriented in all three spheres, and cooperative, but appeared flat, hesitant, tense, and anxious. (Tr. 346.) His speech pattern was pressured at times and, at other times, slow. (Tr. 347.) His responses were approximately 85 percent understood. *Id*. The coherency and relevancy of his responses were assessed as limited, eye contact was poor, and his affect was flat and shallow. *Id*. Mischka generally exhibited extremely high levels of anxiety. *Id*. His concentration skills were limited to four digits forwards. (Tr. 348.) He did not understand simple proverbs, and his general intelligence level was estimated to be in the borderline range. *Id*. His full scale IQ score was 66 placing him within the 1st percentile of the population. (Tr. 349.) Based on the Wechsler Adult Intelligence Test III, his verbal IQ was 71 and performance IQ was 67. (Tr 352.)

Halas opined that the "relative close agreement between the client's verbal and performance scale IQs is generally indicative of both a valid and accurate measure of the client's true overall long-term functioning and academic potentialities. These scores generally seem inconsistent with the client's previous placement in regular classes and his life functioning levels." (Tr. 350.) Halas diagnosed Alcohol Abuse Disorder currently in remission, Anxiety Disorder NOS, Borderline Intellectual Functioning, and ascribed a Global Assessment of

Functioning ("GAF") score of 55.[1]  *Id.*  Halas further opined that Mischka had marked limitations in his ability to relate to others, including peers, supervisors, and the general public, and in his ability to withstand the stresses and pressures associated with most day-to-day work settings.  (Tr. 350-51.)  Halas also felt that Mischka was moderately limited in his ability to follow through with simple one and two step instructions or directions.  (Tr. 350.)

On July 20, 2006, state agency psychologist Steven J. Meyer, Ph.D., assessed Mischka's mental residual functional capacity ("RFC").  (Tr. 354-71.)  Dr. Meyer diagnosed borderline intellectual functioning, anxiety disorder, not otherwise specified, and alcohol abuse in remission.  *Id.*  He opined that Mischka had mild limitations in activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 368.)  Dr. Meyer also found that Mischka was not significantly limited in any area of understanding or memory.  (Tr. 354.)  He observed that it would be best if Mischka did not work with the public.  (Tr. 356.)  Dr. Meyer also stated that Mischka "would perform best in a work setting with simple/moderately complex routine, that [claimant] is motivated to perform, no strict production quotas, regular expectations, and few changes."  *Id.*

On August 14, 2006, Mischka underwent an internal medicine examination with Ata Ulhaq, M.D., at the request of the state agency.  (Tr. 376-80.)  Mischka stated that he did not have a primary care physician.  (Tr. 376.)  Mischka complained of right hip problems.  *Id.*

---

[1]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

Examination of Mischka's lower extremities revealed some hypertrophy in his left thigh and a right foot deformity. (Tr. 378-79.) Neurological exam revealed intact motor and sensory functions, intact deep tendon reflexes, and an unsteady gait. (Tr. 378.) Dr. Ulhaq's clinical impression included the following: mental retardation with moderate depression, possible problems with alcohol, a poor social support system, congenital heart problems, hypertension, and degenerative disease of the hips. (Tr. 379.)

On September 21, 2006, state agency reviewing physician Gerald Klyop, M.D., completed a physical RFC assessment. (Tr. 381-88.) Dr. Klyop opined that Mischka could occasionally lift ten pounds, frequently lift less than ten pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push and/or pull to a limited degree in his lower extremities. (Tr. 382.) Dr. Klyop determined that Mischka could never work on ladders, crawl, crouch, or kneel, that he could occasionally climb ramps/stairs and occasionally balance, and that he could frequently stoop. (Tr. 383.) Dr. Klyop also felt that Mischka had no manipulative, visual, communicative, or environmental limitations. (Tr. 384-85.) On December 2, 2006, Mel Zwissler, Ph.D., affirmed Dr. Klyop's findings as written. (Tr. 389.) On December 14, 2006, Willa Caldwell, M.D., also affirmed Dr. Klyop's findings. (Tr. 390.)

*Hearing Testimony*

At the hearing, Mischka testified to the following:

- He has pain in his knees, feet, and hip, and his memory "comes and goes." (Tr. 33-35.)

- He occasionally mows lawns for extra money. (Tr. 34.) A year earlier, he worked as a temporary at a leather company approximately forty hours a week. (Tr. 37-39.)

- He has never seen a psychiatrist or psychologist and did not have any problems in school. (Tr. 39.)

- He can lift one-hundred pounds and stand for five hours before needing to sit. (Tr. 50-51.)

Mischka's sister, Tammy Lucas, testified to the following:

- She believed Mischka's mentality is that of a twelve year old – both from an intelligence and emotional standpoint. (Tr. 42; 45.)

- When Mischka lived with her, she would have to tell him to do basic things like showering and cleaning his room. *Id*. He would urinate in bottles and defecate in bags. (Tr. 44.) He feared using the telephone. *Id*. When he attended school, he was mostly in special education classes. *Id*.

- Mischka could follow simple one and two-step directions, but becomes confused if it involves three or four steps. (Tr. 46-47.)

- Mischka has no health insurance, which is why she has not taken him to see a psychiatrist or psychologist. (Tr. 47-48.)

- She stated that Mischka drinks a lot, has had some hip problems, and cannot lift much weight as he is not very strong. (Tr. 49.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Mischka was insured on his alleged disability onset date, March 10, 2006, and remained insured through December 31, 2007. (Tr. 11.) Therefore, in order to be entitled to POD and DIB, Mischka must establish a continuous twelve month period of disability commencing between those two dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Mischka established medically determinable severe impairments due to anxiety disorder, borderline intellectual functioning, status post left hip replacement, and right foot deformity. (Tr. 12.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* Mischka is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Mischka is not disabled.

---

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI. Analysis

Mischka claims the ALJ erred because: (1) his finding at Step 5 of the sequential evaluation was contrary to law and unsupported by substantial evidence; (2) he failed to properly evaluate Mischka's credibility or the credibility of Mischka's sister; and, (3) his reliance on the VE's testimony was improper, as the VE's testimony was based on outdated materials in the Dictionary of Occupational Titles ("DOT").

Mischka claims that the ALJ's determination at Step 5 was based upon a hypothetical that did not accurately portray all of his limitations, and, therefore, the VE's testimony does not constitute substantial evidence. (Pl.'s Br. at 10-11.) A hypothetical question must precisely and comprehensively set out every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Mischka further contends that the ALJ failed to follow Social Security Ruling 96-6p, 1996 SSR LEXIS 3 ("SSR 96-6p").  SSR 96-6p states that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review."  Further, ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." *Id*.

> The ALJ posed the following hypothetical to the VE:
>
> How about assuming a hypothetical person with the same age, education, work experience as Mr. Mischka, who could lift up to 20 pounds, but then only on an occasional basis, 10 pounds on a frequent basis.  Would perform jobs, who would be able to sit for at least 6 hours during the course of an 8 hour day, stand for no more than 2 hours, would be able to remember, understand and carry out normal and simple instructions, make simple work related decisions, could do that on a sustained and continuous basis, could do jobs that did not involve any more than brief superficial contact with coworkers, no interactions with the general public, and could do jobs that ... did not involve any crawling, kneeling, crouching, did not involve any rapid assembly line work or high production rate quotas, no more than 8 hours of work in a shift.

(Tr. 53.)  The ALJ clarified that the VE was to consider Mischka as having a twelfth grade education and was not to assume that Mischka was limited in his ability to read.  (Tr. 54.)  The

10

VE identified the following unskilled jobs that someone with the above limitations could perform: at the light level (1) office helper – 2,575 jobs locally and 58,750 nationally; (2) unarmed security guard – 2,810 locally and 75,000 nationally; at the sedentary level (3) office clerk – 5,155 locally and 137,500 nationally; (4) surveillance system monitor – 3,120 locally and 83,300 nationally. (Tr. 54.) The ALJ then asked whether such person was employable if he or she was "overwhelmed by simple two, three step activities so that there would be a significant number of work stoppages during the course of a day and work week." (Tr. 55.) The VE responded that such person would not be employable. *Id*. The VE also testified that if the hypothetical person had borderline intellectual functioning and an IQ of 66, he or she would not be employable. *Id*.

The ALJ's decision is replete with inadequately explained findings. Most notable is the ALJ's failure to adequately discuss the weight given to the expert opinions of state agency physicians.[3] The ALJ acknowledged that cognitive testing performed by Halas suggested that Mischka had borderline intellectual functioning based on his full scale IQ of 66. (Tr. 12.) Nonetheless, the ALJ neither included this finding in the mental RFC analysis, nor explained the reasons for discounting the opinion. Given that the VE expressly testified that an IQ of 66 would render Mischka unemployable, the absence of any discussion on this issue undermines the

---

[3] For example, the ALJ concluded that Mischka was capable of a limited range of light work despite finding that he could only stand/walk for up to two hours in an eight-hour work day. (Tr. 16.) Pursuant to SSR 83-10, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off an on, for a total of approximately 6 hours of an 8-hour workday." It further explains that there are relatively few unskilled light jobs performed in a seated position. *Id*. As such, Mischka's capabilities, based on the ALJ's own findings, amount to little more than the ability to perform sedentary work.

11

decision as a whole. While the ALJ was not bound to accept the test score, he is bound to follow Social Security Rulings. *See* 20 C.F.R. § 402.35(b)(1) ("We publish Social Security Rulings in the Federal Register under the authority of the Commissioner of Social Security. They are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted.")

In conclusion, this Court cannot determine what weight, if any, the ALJ ascribed to the IQ testing performed by Halas. His opinion failed to follow the applicable Social Security Administrations's procedural rules. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004).

The Court, therefore, remands the case under "sentence four" of 42 U.S.C. § 405(g) for a new decision that: (1) fully explains the weight given to the opinions of *all* the State Agency medical and psychological consultants of record, (2) fully incorporates those limitations accepted as valid into an accurate hypothetical, and (3) complies with all of the Social Security Administration's regulations and rulings.[4]

---

[4] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

**VII. Decision**

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

                                              /s/ Greg White
                                              U.S. Magistrate Judge

Date: July 13, 2010